Case No. 24-2249

_____

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

TAMMY R. PHILLIPS and TAMMY R. PHILLIPS, A PROF. LAW CORP.

Appellants-Creditors

v.

AMY L. GOLDMAN,

Appellee-Trustee

_____

Appeal from the U.S. District Court,
C.D. Cal.  No. 2:22-cv-04450-MWF
(Underlying Case No. 1:22-ap-01014 VK, Bankr. C.D. Cal.)

## APPELLANTS' AMENDED OPENING BRIEF

CHARLES Q. JAKOB
Cal. State Bar No. 166205
7144 Fair Oaks Blvd., Suite 3A
Carmichael, CA  95608
(916) 900-4244

Attorney for Appellants-Creditors PHILLIPS & CORPORATION

## CORPORATE DISCLOSURE STATEMENT

Tammy R. Phillips, a Professional Law Corporation ("Corporation"), has no

parent corporation and no publicly held corporate shareholders.

DATE:          November 13, 2024

By:    /s/ Charles Q. Jakob
Attorney for Creditor-Appellants

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................1

II.  JURISDICTIONAL STATEMENT ..................................................4

   A.      The Lower Courts Had Jurisdiction.........................................4

   B.     This Court Has Jurisdiction Because the District Court Affirmed the Bankruptcy Court's Order that Goldman is Entitled to Quasi-Judicial Immunity.  That Immunity is an "Absolute" Immunity from Suit.  It Means the Suit Does Not Proceed Further and it is Immaterial Whether the Defendant Acted with Ordinary Negligence, Gross Negligence, Intention, or Malice. The Putative "Remand" Serves No Purpose because the District Court "Fixed the Parties Rights and Obligations" Through a Controlling Issue.  The Case Would Arrive in the Bankruptcy Court "Dead on Arrival."..............................5

     1.   The District Court Decision is Final because the "Remand" is Illusory. The Bankruptcy Court Already Did What it is Supposed to do on Remand......6

     2.   The District Court Decision Can Also be Deemed Final because the "Remand" Concerns a "Purely Mechanical" Task. ..........................................10

     3.   Jurisdiction is Proper under the Four-Factor Test for Cases Involving Remands .......................................................................................................12

     4.   The Court Should, if Necessary, Invoke its Ordinary and     Supervisory Mandamus Powers ...............................................................................14

III. ISSUES PRESENTED........................................................................16

IV.  STATEMENT OF THE CASE ..........................................................18

V.   SUMMARY OF ARGUMENT .........................................................27

VI.  STANDARDS OF REVIEW ..........................................................32

VII. ARGUMENT ...........................................................................33

A.      Critical Legal Background ........................................................33

B.      Circuit Law Recognizes Trustees Sued for Breach of Fiduciary Duty Can Be Liable for Simple Negligence.  It is the Traditional Standard for Trustee Liability to Beneficiaries, Conforms to Supreme Court Caselaw, and Promotes Careful Administration.  Judicial Attempts to Require Gross Negligence Constitute an Improper Attempt to Legislate. .....................................................36

C.      Creditors Stated a Plausible Claim for Breach of Fiduciary Duty.  They were Not Required to Plead Gross Negligence, but the Facts Alleged Established Gross Negligence under *Schooler*. .......................................................39

D.      A Cause of Action is not Insufficiently Pled Merely because a Defendant Might, in the Abstract, be Able to Establish an Affirmative Defense.   The Affirmative Defense Must Apply with No Uncertainty .......................................41

E.      The Bankruptcy Court Improperly Granted the Motion to Dismiss. Goldman Did Not Show Satisfaction of Circuit Requirements for the Defense. Quasi-Judicial Immunity is Not a Defense to Breach of Fiduciary Duty without an Order Approving the Breach after Candid Disclosure ....................................42

F.      Goldman Had No Discretion and Is Not Entitled to Qualified Immunity under Any Standard.   Circuit Law Limits Bankruptcy Trustee Assertion of Quasi-Judicial Immunity. ...........................................................45

G.      The Bankruptcy Court Improperly Denied Leave to Amend. ..................48

H.      This Court Should Reverse and Remand to a New Judge. .......................49

VIII.     CONCLUSION ..........................................................................51

iii

# TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

In re Abraham,
163 B.R. 772 (Bankr. W.D. Tex. 1994)........................................34, 46

In re AFI Holding, Inc.,
530 F.3d 832 (9th Cir. 2008) ................................................34

Ahcom, Ltd. v. Smeding,
623 F.3d 1248 (9th Cir. 1994) ...............................................4

Albino v. Baca,
747 F.3d 1162 (9th Cir. 2014) ...............................................42

Antoine v. Byers & Anderson, Inc.,
508 U.S. 429 (1993)...............................................27, 28, 45

ASARCO, LLC v. Union Pac. R.R. Co.,
765 F.3d 999 (9th Cir. 2014) ...............................................42

Bank of New York Mellon v. Watt,
867 F.3d 1155 (9th Cir. 2017) ...............................................6

Barahona v. Union Pac. R.R. Co.,
881 F.3d 1122 (9th Cir. 2018) ...............................................11

Barker v. Riverside County Office of Ed.
584 F.3d 821 (9th Cir. 2009) ...............................................33

In re Baroni,
643 B.R. 253 (Bankr. C.D. Cal. 2022) ...............................................25

Bauman v. United States District Court,
557 F.2d 650 (9th Cir. 1977) ...............................................14

Matter of Behrens,
900 F.2d 97 (7th Cir. 1990) ...............................................10

Bennett v. Williams,
892 F.2d 822 (9th Cir. 1989) ...............................................29, 34, 44

iv

In re Blixseth,
    2010 WL 716198 (Bankr. D. Mont. Feb. 23, 2010) ...........................................25

Bowman v. Niagara Mach. & Tool Works, Inc.,
    832 F.2d 1052 (7th Cir. 1987) ..........................................................................15

Breier v. Northern Cal. Bowling Proprietors' Ass'n,
    316 F.2d 787 (9th Cir. 1963) ..............................................................................9

Broam v. Bogan,
    320 F.3d 1023 (9th Cir. 2003) ..........................................................................12

Bullard v. Blue Hills Bank,
    575 U.S. 496 (2015) .......................................................................................5, 6

Burton v. Infinity Capital Management,
    862 F.3d 740 (9th Cir. 2017) ............................................................................47

Carranza v. City of San Pablo,
    2022 WL 110647 (N.D. Cal. Jan. 12, 2022) .....................................................12

In re Castillo,
    297 F.3d 940 (9th Cir. 2002) ....................................................................*passim*

Chang v. Cashman,
    2024 WL 1160909 (N.D. Cal. Mar. 18, 2024) ...........................................11, 12

In re Chappell,
    373 B.R. 73 (9th Cir. BAP 2007) ....................................................................24

In re Cochise College Park, Inc.,
    703 F.2d 1339 (9th Cir. 1983) ..........................................................30, 34, 38

Collins v. Daniels,
    916 F.3d 1302 (10th Cir. 2019) ........................................................................7

In re Continental Coin Corp.,
    380 B.R. 1 (Bankr. C.D. Cal. 2007) ..........................................................37, 44

D'Agostino v. ev3, Inc.,
    845 F.3d 1 (1st Cir. 2016) ..................................................................................7

D'Lil v. Best Western Encina Lodge & Suites,
    538 F.3d 1031 (9th Cir. 2008) ............................................................50

Dalton v. Specter,
    511 U.S. 462 (1994).........................................................................46

Davis v. District of Columbia,
    158 F. 3d 1342 (D.C. Cir. 1998).......................................................15

DeGeorge v. U.S. Dist. Court for Cent. Dist. of Cal.,
    219 F.3d 930 (9th Cir. 2000) ............................................................14

Doe v. United States,
    419 F.3d 1058 (9th Cir. 2005) ..........................................................33

Dougherty v. Capitol Cities Commc'ns, Inc.,
    631 F. Supp. 1566 (E.D. Mich. 1986) ...............................................36

Douglas v. U.S. Dist. Court for Cent. Dist. of Cal.,
    495 F.3d 1062 (9th Cir. 2007) ..........................................................14

In re Eastport Assocs.,
    935 F.2d 1071 (9th Cir. 1991) ............................................................9

Ebner v. Fresh, Inc.,
    838 F.3d 958 (9th Cir. 2016) ........................................................8, 48

Executive Software North America, Inc. v. United States District
    Court,
    24 F.3d 1545 (9th Cir. 1994) overruled on other grounds in
    California Dep't of Water Resources v. Powerex Corp., 533 F.3d
    1087 (9th Cir. 2008)..........................................................................14

In re Ferrante,
    51 F.3d 1473 (9th Cir. 1995) ............................................................38

Forrester v. White,
    484 U.S. 219 (1988).....................................................................28, 43

Ghwawanmeh v. Islamic Saudi Acad.,
    268 F.R.D. 108 (D.D.C. 2010) ............................................................7

In re Gilman,
　　544 B.R. 184 (Bankr. C.D. Cal. 2016) ..............................................19, 20, 23, 24

In re Gilman,
　　887 F.3d 956 (9th Cir. 2018) ........................................................................6, 49

In re Gonzales,
　　623 F.3d 1242 (9th Cir. 2010) ................................................................16, 18, 19

In re Gugliuzza,
　　852 F.3d 884 (9th Cir. 2017) ........................................................................5, 13

Matter of Harris,
　　590 F.3d 730 (9th Cir. 2009) ......................................................................32, 43

Hunt v. Imperial Merch. Serv's, Inc.,
　　560 F.3d 1137 (9th Cir. 2009) ..........................................................................32

Insurance Group Comm. v. Denver & Rio Grande Western R.R. Co.,
　　329 U.S. 607 (1947).............................................................................................9

In Re: J & S Properties, LLC,
　　872 F.3d 138 (3d Cir. 2017) (Fisher, J. concurring)..........................................1

In re Johnston,
　　49 F.3d 538 (9th Cir. 1995) ...............................................................................25

Jones v. Alabama-Coushatta Tribe of Texas,
　　2020 WL 8513486 (E.D. Tex. Dec. 9, 2020) ...................................................15

Just Film, Inc. v. Merchant Services, Inc.,
　　873 F. Supp. 2d 1171 (N.D. Cal. 2012)......................................................35, 36

Estate of Kennedy v. Bell Helicopter Textron, Inc.,
　　283 F.3d 1107 (9th Cir. 2002) ...........................................................................15

In re Kile,
　　415 B.R. 723 (Bankr. D. Ariz. 2009)................................................................34

Kroessler v. CVS Health Corp.,
　　977 F.3d 803 (9th Cir. 2020) .............................................................................33

vii

In re Landmark Fence Co., Inc.,
    801 F.3d 1099 (9th Cir. 2015) ............................................................13

In re Lee,
    889 F.3d 639 (9th Cir. 2018) ..............................................................32

In re Leite,
    112 F.4th 1246 (9th Cir. 2024) .....................................................32, 33

In re Mailman Steam Carpet Cleaning Corp. v. Salem,
    196 F.3d 1 (1st Cir. 1999) .................................................................1, 2

In re Marino,
    949 F.3d 483 (9th Cir. 2020) ..............................................................13

In re Marshall,
    721 F.3d 1032 (9th Cir. 2013) ............................................................36

In re McKenzie,
    716 F.3d 404 (6th Cir. 2013) ..................................................44, 45, 46

Mendiondo v. Centinela Hosp. Med. Ctr.,
    521 F.3d 1097 (9th Cir. 2008) ..............................................................4

Mirchandani v. United States,
    836 F.2d 1223 (9th Cir. 1988) ..............................................................9

Mosser v. Darrow,
    341 U.S. 267 (1951) .................................................................30, 38, 39

Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.,
    15 F.4th 885 (9th Cir. 2021) ................................................................33

Murphy Co. v. Biden,
    65 F.4th 1122 (9th Cir. 2023), cert. denied, 144 S. Ct. 1111 (2024) ................46

Parents for Privacy v. Barr,
    949 F.3d 1210 (9th Cir. 2020), cert. denied, 141 S. Ct. 894 (2020).......29, 33, 48

In re Pena,
    974 F.3d 934 (9th Cir. 2020) .......................................................24, 33

Phoenix Newspapers, Inc. v. U.S. Dist. Court for Dist. of Arizona,
    156 F.3d 940 (9th Cir. 1998) ...............................................................14

In re Plaza de Diego Shopping Ctr., Inc.,
    911 F.2d 820 (1st Cir. 1990).................................................................36

In re Reed,
    940 F.2d 1317 (9th Cir. 1991) .............................................24, 35, 47

In re Rigden,
    795 F.2d 727 (9th Cir. 1986) ...............................................................34

Rivera v. Peri & Sons Farms, Inc.,
    735 F.3d 892 (9th Cir. 2013) ...............................................................42

Rodriguez v. FDIC,
    589 U.S. 132 (2020).....................................................................30, 39

Roman Catholic Diocese of Brooklyn, New York v. Cuomo,
    592 U.S. 14 (2020)...............................................................................15

Sams v. Yahoo! Inc.,
    713 F.3d 1175 (9th Cir. 2013) .............................................................42

In re Schooler,
    725 F.3d 498 (5th Cir. 2013) ......................................................*passim*

Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.,
    806 F.2d 1393 (9th Cir. 1986) .............................................8, 11, 48

Smith v. Capital One Bank (USA), N.A.,
    845 F.3d 256 (7th Cir. 2016) ...............................................................10

Stern v. Marshall,
    564 U.S. 462 (2011).............................................................................4

Stoebner v. Opportunity Finance, LLC,
    562 B.R. 368 (D. Minn. 2016).............................................................7

Tibble v. Edison Int'l,
    575 U.S. 523 (2015).............................................................................35

ix

United Nat. Ins. Co. v. R&D Latex Corp.,
    242 F.3d 1102 (9th Cir. 2001) ............................................................49

United States v. Corinthian Colleges,
    655 F.3d 984 (9th Cir. 2011) ........................................................8, 48

United States v. Reyes,
    313 F.3d 1152 (9th Cir. 2002) ............................................................50

United States v. Robin,
    553 F.2d 8 (2d Cir. 1977) ....................................................................49

United States v. Wallace & Tiernan Co.,
    336 U.S. 793 (1949)...............................................................................4

Weisbuch v. County of Los Angeles,
    119 F.3d 778 (9th Cir. 1997) ..............................................................42

U.S. ex rel. Willoughby v. Howard,
    302 U.S. 445 (1938)......................................................................34, 38

Wochos v. Tesla, Inc.,
    985 F.3d 1180 (9th Cir. 2021) ............................................................33

In re Yellowstone Mountain Club, LLC,
    841 F.3d 1090 (9th Cir. 2016) ..................................22, 32, 43, 47

In re Zavala,
    444 B.R. 181 (Bankr. E.D. Cal. 2011).................................................34

**California Cases**

Estate of Beach,
    15 Cal. 3d 623 (1975) ..........................................................................40

Borisoff v. Taylor & Faust,
    33 Cal. 4th 523 (2004) .........................................................................40

Estate of Gump,
    1 Cal. App. 4th 582 (1991) ..................................................................40

_Knutson v. Foster,_
     25 Cal. App. 5th 1075 (2018) ................................................................40

_Mark Tanner Constr. v. Hub Int'l Ins. Servs.,_
     224 Cal. App. 4th 574 (2014) ...............................................................41

_Prakashpalan v. Engstrom, Lipscomb & Lack,_
     223 Cal. App. 4th 1105 (2014) .............................................................41

## Federal Statutes

11 U.S.C.
     § 323 ...............................................................................................1, 34
     § 541 ..................................................................................................33
     § 554 .....................................................................................24,35, 47
     § 704 ...........................................................................................34, 46
     § 727(a)(2) .........................................................................................19

28 U.S.C.
     § 158 ...............................................................................................4, 6
     § 1334 ..................................................................................................4
     § 1651 ................................................................................................14

29 U.S.C.
     § 1104 ........................................................................................30, 38

## California Statutes

Cal. Code of Civil Procedure
     § 343 ..................................................................................................26

## Other Authorities

Fed. R. Bankr. P. 5009 ..........................................................................25, 26

Fed. R. Civ. P. 12 ..........................................................................10, 33, 42

Fed. R. Civ. P. 15 ................................................................................9, 11

xi

March et al., Cal. Practice Guide, Bankruptcy ¶ 10:180-181 (Rutter
    Group 2023) ......................................................................................32

Stevenson & Fitzgerald, Cal. Practice Guide: Federal Civil Procedure
    Before Trial ¶ 9:193.5 (Rutter Group 2024) .................................41, 42

Charles J. Tabb, The History of the Bankruptcy Laws in the United States,
    3 Am. Bankr. Ins. L. Rev. 5 (1995)………………………………… 36, 45, 46

# I.  INTRODUCTION

The Bankruptcy Code provides that a bankruptcy trustee may be sued. <u>See</u> 11 U.S.C. § 323(b).  There are "two types of actions against [bankruptcy] trustees: breach of fiduciary duty claims brought by parties interested in the administration of the [bankruptcy] estate, and claims in tort or contract brought by third parties." <u>In re Mailman Steam Carpet Cleaning Corp. v. Salem</u>, 196 F.3d 1, 7 n.4 (1st Cir. 1999); <u>In Re: J & S Properties, LLC,</u> 872 F.3d 138, 150 (3d Cir. 2017) (Fisher, J. concurring).  This appeal does not arise in a third party suit.   It is a creditor suit for breach of fiduciary duty ("BFD") against bankruptcy trustee Amy Goldman by the appellants Tammy Phillips and her professional corporation ("Creditors").

The BFD claims in the complaint relate to estate property Goldman failed to protect or collect. <u>See</u> 2-ER-135-137.  The complaint did not rely on labels, but detailed factual allegations that, taken as true, showed a plausible claim for gross negligence by the trustee even though gross negligence, as Creditors explain below, is not required to support a prima facie case for BFD.  <u>Cf</u>. <u>Mailman</u>, 197 F.3d at 7.

 Goldman moved to dismiss, relying heavily on ad hominem attacks and misrepresentations. <u>See</u> 2-ER-11. The bankruptcy court accepted stunningly meritless assertions and held the entire complaint time-barred. 1-ER-24.  The district court has now reversed that determination.  1-ER-23. Unfortunately, the

bankruptcy court also accepted Goldman's meritless argument she enjoyed quasi-judicial immunity ("QJI").  The district court affirmed that conclusion.  Id.

The case comes before this Court now because the district court failed to perform fundamental duties as a court of review.  It has incorrectly agreed a BFD case against a bankruptcy trustee must establish "gross negligence" and it has expressly affirmed a determination that Goldman is entitled to QJI.  Apparently admitting the bankruptcy judge committed error, but *without reversing that judge,* the district court purports to remand the case for that bankruptcy judge *to do something that judge already did*. See 1-ER-23, 25 ("dismissed with prejudice").

Creditors submit the district court mis-stated controlling law.  A BFD claim against a bankruptcy trustee requires nothing more than simple negligence and this Court has never said otherwise.   Further, even if such a claim required a showing of gross negligence, it was the *district court's* duty to determine *de novo* whether the complaint plausibly showed gross negligence or might be amended to do so.  Creditors submit the district court obviously doubted the bankruptcy court's conclusions, for if it did not there was no reason to "remand" to the bankruptcy court for a determination whether an amendment were possible. In doing so, the district court improperly  abdicated to the bankruptcy court **its** duty to make that determination.  Finally, both courts disregard controlling law.   Trustees cannot be permitted to violate their fiduciary duties, so they cannot be immune from liability

2

for doing so.  The only way for trustees to obtain immunity is to obtain prior court approval to engage in the conduct that would constitute a breach of fiduciary duties.  Goldman did not and could not make that showing, so she could not be entitled to QJI.

Further, both courts also failed to comprehend the nature of QJI.   It is an "absolute" defense that applies **without regard to the degree of the defendant's culpability.**  Amendment of the complaint serves no purpose because, if the trustee enjoys QJI, the trustee is immune to personal liability without regard to whether her conduct is considered ordinary negligence, gross negligence, or intentional wrongdoing.   This Court has jurisdiction because the district court's action have "fixed rights" and "killed" Creditors' suit.  The "remand" here is illusory because it is pointless.

This Court needs to put an end to the intrigues of the parasitic "bankruptcy ring" by confirming bankruptcy trustees can be liable for BFD for ordinary negligence; announcing that it is improper for lower courts to create federal common law suggesting otherwise; and re-affirming that bankruptcy trustees need to obtain court orders, after full and fair disclosure, before they will allowed to engage in conduct that violates their fiduciary duties.

3

## II.    JURISDICTIONAL STATEMENT

**A.    The Lower Courts Had Jurisdiction**

The bankruptcy court had jurisdiction over Creditors' claims because they *arose in* a bankruptcy case, although not *under* the Bankruptcy Code.   They constituted core proceedings upon which the bankruptcy court could enter appropriate orders and judgments.  See 28 U.S.C. §§ 1334(b); 157(a); Stern v. Marshall, 564 U.S. 462, 475-477 (2011).

The bankruptcy court granted Goldman's motion to dismiss the Creditors' complaint without leave to amend and ordered the action dismissed.  1-ER-25. This constituted termination of the *action* and established the district court's jurisdiction under 28 U.S.C. § 158(a)(1) to hear a timely appeal from a final order. See C. Goelz et al., Rutter Group Practice Guide: Federal Ninth Circuit Civil Appellate Practice ¶¶ 2:286-2:288 (Rutter Group 2024).  See also United States v. Wallace & Tiernan Co., 336 U.S. 793, 794-795 n.1 (1949); Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1102 (9th Cir. 2008); Ahcom, Ltd. v. Smeding, 623 F.3d 1248, 1250 (9th Cir. 1994).

 The district court reversed the bankruptcy court for misapplying the statute of limitations.  After an eighteen-line discussion of quasi-judicial immunity (1-ER-22), however, it concluded:

> [a]lthough Creditors' claim for relief for breach of
> fiduciary duty is not time-barred, **Appellee is entitled to**

4

> **quasi-judicial immunity**.  Accordingly, the Dismissal
> Order is **AFFIRMED** *in part* **and REVERSED** *in part*.
> The case is **REMANDED** to determine whether
> amending the Complaint would be futile.

1-ER-23 (some emphasis added).  The district court also denied Creditors' motion

that any remand be made to a bankruptcy judge within a different division of the

Central District of California. 1-ER-5:5-6.  Creditors timely appealed to this Court

on April 4, 2024. 3-ER-149; 3-ER-155.

**B.     This Court Has Jurisdiction Because the District Court Affirmed the
        Bankruptcy Court's Order that Goldman is Entitled to Quasi-Judicial
        Immunity.  That Immunity is an "Absolute" Immunity from Suit.  It
        Means the Suit Does Not Proceed Further and it is Immaterial Whether
        the Defendant Acted with Ordinary Negligence, Gross Negligence,
        Intention, or Malice.   The Putative "Remand" Serves No Purpose
        because the District Court "Fixed the Parties Rights and Obligations"
        Through a Controlling Issue.  The Case Would Arrive in the
        Bankruptcy Court "Dead on Arrival."**

Bullard v. Blue Hills Bank, 575 U.S. 496 (2015), explains that in bankruptcy

cases appeals are permitted not only from final judgments, but also from orders

that "finally dispose of **discrete disputes** within the larger case." Bullard v. Blue

Hills Bank, 575 U.S. 496, 501 (2015).  Under Bullard, orders resolving a discrete

dispute are "final" and can be appealed as of right if they **alter[] the status quo**

**or fix the parties' rights and obligations."**  See In re Gugliuzza, 852 F.3d 884,

893 (9th Cir. 2017).  This formulation is generally consistent with the Ninth

Circuit's pre-Bullard rule, which looked to whether a court's decision "resolves

5

and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed." See In re Gilman, 887 F.3d 956, 992 (9th Cir. 2018) (citations omitted). Bullard is used to assess finality for appeals under 28 U.S.C. § 158(a) and 28 U.S.C. § 158(d)(1). Bank of New York Mellon v. Watt, 867 F.3d 1155, 1158 (9th Cir. 2017).

### 1. The District Court Decision is Final because the "Remand" is Illusory. The Bankruptcy Court Already Did What it is Supposed to do on Remand.

A remand *usually* suggests the work of the courts below is incomplete and thus not "final." This Court, however, has recognized that a remand does not necessarily preclude jurisdiction. For example, remands addressing "purely mechanical or computational task[s]" or "similarly 'ministerial tasks'" do not affect this Court's jurisdiction analysis. Watt, 867 F.3d 1155 (9th Cir. 2017) citing In re Gugliuzza, 852 F.3d 884, 895, 897 (9th Cir. 2017).

It is a maxim of law, however, that form cannot be exalted over substance. Nothing in Bullard or any authority known to Creditors changes this rule, which means the district court's "remand" must be treated as a nullity.

The district court purports to remand to the bankruptcy court "to determine whether amending the Complaint would be futile." 1-ER-23. But this "remand" is illusory. That task was already performed by the bankruptcy judge, who reached that determination at Goldman's urging. E.g. 2-ER-117:8-10.

6

Moreover, the district court is not at liberty to abdicate its supervisory duties as a court of review.  Futility is a question of law. <u>See</u>, <u>e.g.</u>, <u>Collins v. Daniels</u>, 916 F.3d 1302, 1323 (10th Cir. 2019) (citation omitted); <u>D'Agostino v. ev3, Inc</u>., 845 F.3d 1, 6 (1st Cir. 2016) (citation omitted); <u>Stoebner v. Opportunity Finance, LLC</u>, 562 B.R. 368, 376 (D. Minn. 2016) <u>citing</u> <u>Marmo v. Tyson Fresh Meats, Inc.</u>, 457 F.3d 748, 755 (8th Cir. 2006); <u>Ghwawanmeh v. Islamic Saudi Acad.</u>, 268 F.R.D. 108, 112 (D.D.C. 2010).  On review of an order dismissing a complaint on grounds of futility, the reviewing court is charged with de novo review. <u>See</u> <u>infra</u>.   It was the district court's duty to "say what the law is" and, if the lower court erred, correct the bankruptcy judge through a reversal.

There would be no reason to remand if the district court was confident the bankruptcy court had not erred.  The remand implies the district court believed the bankruptcy court erred. The district court's misgivings were fully justified.  The bankruptcy court not only misunderstood the limitations issue, it misunderstood the relationship of the parties.  **This is not a case involving strangers.  It is one in which the defendant-appellee, through her choice of profession, has voluntarily assumed a fiduciary relationship with the plaintiff Creditors.** Even in a circuit applying a "gross negligence" standard to trustee liability, a bankruptcy trustee who takes no action despite being notified by a beneficiary that the debtor is stealing or destroying estate property demonstrates gross negligence

7

through a "**reckless indifference or deliberate disregard of the trustee's fiduciary duty**." See In re Schooler, 725 F.3d 498, 500- 503, 511-515 (5th Cir. 2013) (given warnings of concerned creditor and obvious risk of misappropriation given debtor's access to estate property, expert testimony not necessary to establish trustee grossly negligent as failure to seek control over assets demonstrated indifference to fulfilling duties to collect estate property).

The bankruptcy judge also missed another fundamental point. Leave to amend is liberally granted because an apparently defective complaint can often be amended through **additional, non-contradictory allegations** that show a claim is not futile. See United States v. Corinthian Colleges, 655 F.3d 984, 995 (9th Cir. 2011) (noting "[t]he standard for granting leave to amend is generous").[1]   In dismissing for failure to state a claim "'a [trial] court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading **could not possibly be cured by the allegation of other facts**.'" Ebner v. Fresh, Inc., 838 F.3d 958, 963 (9th Cir. 2016) (citations omitted); Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986) (granting motion to dismiss before answer filed does not terminate right to

---

[1] For example, a claim that appears time-barred based on a comparison of the filing date and claim-accrual date might be saved through facts establishing tolling or that the defendant is estopped to assert a limitations defense.

8

amend; motion is not "responsive pleading" under FRCP 15(a); "order of dismissal denying leave to amend at that stage is improper"); Breier v. Northern Cal. Bowling Proprietors' Ass'n, 316 F.2d 787 (9th Cir. 1963) (same).

"When a bankruptcy court enters a final order, a district court's order affirming … that order is also final." In re Eastport Assocs., 935 F.2d 1071, 1075 (9th Cir. 1991). "When matters are decided by an appellate court, its rulings, unless reversed by it or by a superior court, bind the lower court." Insurance Group Comm. v. Denver & Rio Grande Western R.R. Co., 329 U.S. 607, 612 (1947). Lower courts are not free to decide issues on remand that were previously decided either expressly or by necessary implication on appeal. See Mirchandani v. United States, 836 F.2d 1223, 1225 (9th Cir. 1988) (citations omitted). The adherence of lower courts to the rule of mandate is absolutely "necessary to the operation of a hierarchical judicial system." Id. citing 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 (1981). Even if the bankruptcy judge were willing to admit her errors, she cannot do anything about them on remand. She cannot escape an affirmed order that the trustee enjoys QJI. But QJI is an **absolute** immunity from suit. Like judicial immunity, it shields a trustee from suit regardless of the alleged culpability of the trustee's conduct. Cf. In re Castillo, 297 F.3d 940, 947 (9th Cir. 2002) citing Forrester v. White, 484 U.S. 219, 227-28 (1988) (judicial immunity insulates judges "even when it is alleged ...

9

action was driven by malicious or corrupt motives"); id. ("[a]bsolute judicial immunity … extends to nonjudicial officers for "all claims relating to the exercise of judicial functions").   An amendment would serve no purpose.  The suit is dead and Creditors are effectively asking this Court to resuscitate it.

When a district court's decision on a bankruptcy court's interlocutory order leaves nothing for the bankruptcy court to do, it may transform the bankruptcy court's interlocutory order into a final appealable order and establish the required two tiers of finality. Smith v. Capital One Bank (USA), N.A., 845 F.3d 256, 259 (7th Cir. 2016); Matter of Behrens, 900 F.2d 97, 99 (7th Cir. 1990).  By parity of reasoning, when a district court's decision on a bankruptcy court's *final* order is thought to be interlocutory because it includes a remand, the district court order should be deemed final if the remand in fact leaves nothing for the bankruptcy court to do or the thing it is remanded to do is ineluctably pointless.

### 2.    The District Court Decision Can Also be Deemed Final because the "Remand" Concerns a "Purely Mechanical" Task.

A first motion to dismiss a complaint generally raises two issues:  (1) whether to dismiss the complaint or a claim therein; and (2) whether to grant leave to amend a dismissed claim or complaint to verify the initial determination is, in fact, the correct one.   The federal rules of civil procedure treat these issues as separate matters.  Motions to dismiss are governed by Rule 12.  Amendments to

pleadings are governed by Rule 15. Cf. Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986).

The "remand" here relates solely to the second issue. While the issue of futility is a question of law, however, circuit law effectively makes the issue of **amendment** akin to a "purely mechanical" matter. It does so because judges are **not omniscient as to the facts of a particular case** and denial of leave to amend on grounds of futility is proper "only if **no set of facts can be proved under the amendment** to the pleadings that would constitute a valid and sufficient claim or defense.'" Barahona v. Union Pac. R.R. Co., 881 F.3d 1122, 1134 (9th Cir. 2018) (citation omitted, emphasis added). Until an amended pleading is **filed or not filed**, a judge with no personal knowledge of the facts will not know whether a plaintiff could allege "other facts, not inconsistent with existing allegations," that would render a claim plausible. As a practical matter, after finding futility on the original complaint any judge who is careful and wants to assure justice will grant leave to file a **first** amended complaint **as a matter of course.** This happens in federal courts across the country every day and it is what is commonly termed a "**no brainer**."

Not surprisingly, as an empirical matter denial of leave to amend on grounds of futility is "rare" and proper only in "extraordinary" cases. Chang v. Cashman, 2024 WL 1160909 at *7 (N.D. Cal. Mar. 18, 2024) citing Carranza v. City of San

11

Pablo, 2022 WL 110647 at *4 (N.D. Cal. Jan. 12, 2022); see also Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003) (citation omitted).   "Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." Carranza, 2022 WL 110647 at *4.  "**The merits or facts of a controversy are not properly decided in a motion for leave to amend and should instead be attacked by a motion to dismiss for failure to state a claim or for summary judgment**." Chang, 2024 WL 1160909 at *7 (citation omitted, emphasis supplied).

Creditors submit the "remand" here is for a mechanical ("no brainer") matter.  Unfortunately, the bankruptcy court now faces **real futility,** but not because it is impossible to plead and prove gross negligence (which was already done although not necessary).  Any amendment is futile because the bankruptcy and district courts held Goldman is entitled to immunity from suit.   Both judicial and quasi-judicial immunity are absolute immunities that prevent the suit from proceeding.   The degree of culpability of the government official who has been determined (incorrectly) to be acting in a judicial capacity is utterly irrelevant.

**3.      Jurisdiction is Proper under the Four-Factor Test for Cases Involving Remands**

Even if one questioned whether the district court's "remand" were illusory, jurisdiction would be proper under the four-factor test for considering cases

12

involving **true remands.**  See In re Marino, 949 F.3d 483, 487 (9th Cir. 2020); In re Gugliuzza, 852 F.3d 884, 894 (9th Cir. 2017); In re Landmark Fence Co., Inc., 801 F.3d 1099, 1102 (9th Cir. 2015).   As indicated, the policy against avoiding piecemeal litigation has no application because the district court's decision affirming Goldman is entitled to QJI is a "controlling issue."  QJI is a complete defense that precludes Goldman's personal liability regardless of what is alleged in the complaint.  There is no systemic interest in preserving the bankruptcy court's role as a factfinder.  Not only is "futility" a question of law, but courts do not "find facts" on a motion to dismiss.  For purposes of a motion to dismiss, courts take well-pleaded facts as true.  Judicial efficiency is not served by ignoring the law.  An absolute immunity from suit precludes Goldman's liability even if her conduct was grossly negligent.  Delaying review would cause irreparable harm, as explained in the next section, because the court rulings violate constitutional rights.  Goldman is being given an immunity to suit that does not apply in "first party" suits for breach of fiduciary duty.   The authority of common law trustees is governed by trust instruments (not applicable in the case of a bankruptcy trustee), statutes, and common law.   Fiduciary duties are constraints on trustee authority, which is why QJI can only apply in third party suits.  By statute and fiduciary duty, the trustee is charged with gathering and protecting estate property.   There is no

unilateral authority to deviate from that obligation, which is why circuit law requires the trustee to obtain immunity through a "comfort order."

**4.      The Court Should, if Necessary, Invoke its Ordinary and Supervisory Mandamus Powers**

If the court finds it has no jurisdiction to hear this appeal under Sections 158 and 1292 of the Judicial Code, it should exercise its power to take jurisdiction through mandamus under the All Writs Act, 28 U.S.C. § 1651.

Mandamus may be used to assert jurisdiction when the court is convinced the lower court erred and the petitioner's right to the writ is clear and indisputable. Executive Software North America, Inc. v. United States District Court, 24 F.3d 1545, 1551 (9th Cir. 1994) (citations and internal quotations omitted) overruled on other grounds in California Dep't of Water Resources v. Powerex Corp., 533 F.3d 1087 (9th Cir. 2008). The court considers five factors described in Bauman v. United States District Court, 557 F.2d 650 (9th Cir. 1977) (citations omitted).[2] Here the inferior court orders are clearly erroneous as a matter of law. This is a

---

[2] A petition for mandamus need not, and seldom will, satisfy all five factors. See Bauman, 557 F.2d at 655; Douglas v. U.S. Dist. Court for Cent. Dist. of Cal., 495 F.3d 1062, 1066 (9th Cir. 2007); DeGeorge v. U.S. Dist. Court for Cent. Dist. of Cal., 219 F.3d 930, 934 (9th Cir. 2000); Phoenix Newspapers, Inc. v. U.S. Dist. Court for Dist. of Arizona, 156 F.3d 940 (9th Cir. 1998) (court may grant relief if petitioner can establish presence of several factors).

"first party" suit for breach of fiduciary duty and a trustee cannot enjoy QJI without a valid "comfort order."  See infra.

Plaintiffs are suffering irreparable injury.   Cases indicate plaintiffs are not denied their First Amendment petition rights merely because a defendant qualifies for an immunity or, equivalently, is protected by a statute of repose.[3]  E.g., Bowman v. Niagara Mach. & Tool Works, Inc., 832 F.2d 1052, 1055 (7th Cir. 1987) (statute of repose did not deny access to the courts or equal protection when defendant fell within its protection; right of petition is right of access, not right of success); Jones v. Alabama-Coushatta Tribe of Texas, 2020 WL 8513486, at *3 (E.D. Tex. Dec. 9, 2020).  A court knowingly[4] conferring immunity on a defendant who does not satisfy the requirements of the immunity violates a plaintiff's due process and petition rights.  Even temporary violations of these constitutional rights constitute irreparable damage.  See, e.g., Roman Catholic Diocese of Brooklyn, New York v. Cuomo, 592 U.S. 14, 19 (2020) citing Elrod v. Burns, 427 U.S. 347, 373 (1976); Davis v. District of Columbia, 158 F. 3d 1342, 1346 (D.C. Cir. 1998) (prospective violation of a constitutional right can constitute irreparable injury).  Moreover, by refusing to render a decision on whether the bankruptcy

---

[3] A statute of repose operates like an immunity from suit.  See Estate of Kennedy v. Bell Helicopter Textron, Inc., 283 F.3d 1107, 1111 (9th Cir. 2002).

[4] Both courts were notified that Goldman had no court order approving the conduct at issue.  E.g. 2-ER-55, 2-ER-94.

15

court erred because amendment might be possible, the district court failed to perform its duties as a reviewing court.  Mandamus may be appropriate in supervisory cases even if error can be corrected on appeal. See In re Gonzales, 623 F.3d 1242, 1246 (9th Cir. 2010).

The lower court orders raise an issue of first impression:  whether the lower courts are improperly creating a federal common law of fiduciary duties (i.e., one changing the requirements for a BFD cause of action).   Creditors submit that, at the behest of the trustees, the bankruptcy courts are improperly "legislating" benefits for the trustees who regularly appear before them because Congress chose not to do so.  This error appears to be an oft-repeated error in lower courts.

### III.   ISSUES PRESENTED

1.   Whether the Bankruptcy Court erred by dismissing Creditors' complaint on grounds it did not plausibly assert gross negligence when this Court has not adopted that standard, federal common law adopting such a standard is improper, and the complaint met that standard by paralleling the allegations in Schooler.

2.   Whether the Bankruptcy Court erred by dismissing Creditors' complaint on grounds of quasi-judicial immunity in a first party suit when the trustee could not and did not show she had obtained a proper "comfort order."

3.   Whether trustees have authority or discretion to decide unilaterally whether they will preserve estate property absent a court order and whether, as a

16

consequence, the safeguarding function is necessarily *administrative* and the trustee's conduct was *ultra vires*.

4.     Whether the bankruptcy court compounded its error by failing to grant leave to file a first amended complaint if necessary, as expressly requested, especially when the district court's "remand" implicitly recognizes it was not "clear" that gross negligence could not be alleged.

5.     Whether the district court erred in affirming the Bankruptcy Court's assertion that a creditor's action for breach of fiduciary duty against a bankruptcy trustee must establish gross negligence or that the trustee enjoyed quasi-judicial immunity in a breach of fiduciary duty action without the comfort order required by circuit law.

6.     Whether the district court violated its supervisory duty as a reviewing court by delegating to the bankruptcy court its duty to conduct a *de novo* review on the issue of the alleged futility of amendment.

7.      Whether the district court should have reversed and remanded the bankruptcy order in toto and remanded the action to a bankruptcy judge in a different division of the U.S. Bankruptcy Court for the Central District of California.

8.     Whether, when a bankruptcy judge has dismissed a complaint against a bankruptcy trustee for breach of fiduciary, even without a request the appellate

17

court should automatically consider whether any remand should be made to an independent judge given the risks posed by the <u>Barton</u> doctrine.

## IV.   STATEMENT OF THE CASE

The debtor Kevan Gilman was a graduate of People's College of Law with a record of professional discipline and an extensive record of litigation relating to his financial problems (including an unsuccessful 1995 bankruptcy filing).  <u>See</u> 2-ER-129-130.  Gilman incurred significant liabilities to Creditors in litigation that summarily adjudicated his suit against the Creditors as meritless and concluded after a trial that Gilman had knowingly violated California venue laws as part of a scheme to extract unwarranted settlements.   On February 7, 2011, Gilman attempted to shed his liabilities through a Chapter 7 bankruptcy.  <u>Id.</u>  Goldman was appointed as the case trustee. <u>See</u> <u>id.</u>  Creditors wrote Goldman to warn Goldman that Gilman was extraordinarily dishonest, had filed papers falsely stating he had no prior bankruptcies, and was concealing assets, including malpractice claims against his attorneys. <u>See</u> <u>id.</u> 130.  Goldman did not reply or call Creditors to investigate these assertions.  She discovered he was not using his assigned social security number, but did not examine Gilman himself on that issue (as directed by the DOJ's Handbook for Chapter 7 trustees) as she casually accepted Gilman's attorney's assertion the incorrect social security number was a "typo." <u>See</u> <u>id.</u> 130-

18

131.  She did not demand Gilman provide medical records about his claimed medical disability or otherwise examine him on that issue.  See id. 131.

Creditors filed an anti-discharge/non-dischargeability action on or about May 13, 2011.  Id.  Without challenging Gilman's exemption claims, Goldman filed a report of no distribution ("RND") on or about June 21, 2011.  Id.; 2-ER-145. The RND represented that Goldman *had* diligently investigated Gilman's finances and would continue to perform her duties if not excused through court closure of the case ("I request that I be discharged from any further duties").  See 2-ER-145. Some four days later Creditors initiated a contested matter blasting the "findings" in Goldman's RND. Id. (Docket Entries 27-30).   Gilman was later found not to be disabled, as claimed, and in late 2016, after a trial, was denied a discharge under 11 U.S.C. § 727(a)(2). See In re Gilman, 544 B.R. 184 (Bankr. C.D. Cal. 2016); 2-ER-142; see also 2-ER-134-35 (disallowing additional exemption claims not addressed in first RND).

For reasons indicated in the complaint, in or around February 2022 the Creditors filed an adversary complaint alleging Goldman breached the fundamental fiduciary duty to preserve and protect property of the bankruptcy estate.  See 2-ER-127-139.  The claims alleged were carefully limited to matters that would not be time-barred.  They were set forth in two "causes of action" (which were probably supposed to be two "counts" on a single cause of action). See 2-ER-135-137.  One

19

addressed the debtor's waste of real property.  The other addressed the debtor's

theft of rents. See id.

Creditors do not believe they were required to allege anything but simple

negligence, but they alleged gross negligence and their allegations were not

conclusory.  Their complaint set forth factual allegations paralleling those in In re

Schooler, 725 F.3d 498 (5th Cir. 2013), where it was held a trustee commits gross

negligence by failing to respond aggressively to creditor warnings of a risk of

misappropriation by a debtor with ready access to estate property. See id. at 500-

503, 511-515; see also 2-ER-132 to 2-ER-135; Compl. ¶ 23 (Goldman reminded

on January 12, 2016 that debtor had converted financial accounts); id. ¶¶ 27-28

(Goldman notified Debtor had been taking estate property by renting rooms at

Varna property); id. ¶ 29 (Goldman notified on May 16, 2019 that Creditors had

learned Debtor was not maintaining real properties); id. ¶ 34 (Creditors learned

Debtor obtained access to Corbin property in September 2019 and by July 2020

was renting it at $ 1200 a month).  Goldman made no attempt to obtain turnover

orders. Id. ¶ 41.  The complaint alleges Goldman allowed the **destruction and

dissipation of estate assets** because she took no action to prevent those losses.

The bankruptcy docket shows no order permitting those losses to take place and

Goldman has not pointed to any such order.

20

Goldman moved to dismiss the complaint for failure to state a claim upon which relief could be granted. 2-ER-111 et seq.   Apparently sensing an opportunity to tap into judicial ill-will, the motion began with misrepresentations, improper arguments about the "true facts," and ad hominem attack against Creditors.  E.g. 2-ER-64:11-12; 2-ER-115 (accusing creditors of "vexatious" course of litigation over single "$23,000 judgment"); but see 2-ER-130 (judgments estimated to have value of $ 700,000).   Goldman then disregarded first principles of statutes of limitation.  Without addressing injury from the specific wrongs alleged in the two counts, Goldman asserted the complaint was time-barred because the report of no distribution ("RND" or "no asset report") she filed in 2011 supposedly provided "notice."[5]  2-ER-124:10-17.   Goldman also asserted she enjoyed quasi-judicial immunity because Creditors' complaint somehow failed to show she engaged in gross negligence. 2-ER-121-123.  Undoubtedly recognizing that this circuit requires a particular showing before it will deem any immunity to "attach" (see 2-ER-94), Goldman seemed to be concocting a bizarre argument to suggest she had satisfied those requirements.

---

[5] Goldman asserted all claims were time-barred because the 2011 RND "gave notice" she did not intend to protect certain estate property. 2-ER-124:10-12. Statutes of limitation, however, are triggered by the *accrual* of causes of action, not the alleged giving of notice.  The claims in the complaint could not even have existed in 2011.

21

Creditors asserted that Goldman's limitations arguments were disingenuous because they did not satisfy the first principles governing limitations statutes. 2-ER-98-99; 1-ER-37:4-24 (explaining continuous accrual concept). Creditors further asserted that their complaint set forth factual allegations showing gross negligence even though nothing more than simple negligence was needed to establish breach of fiduciary duty in this circuit. See 2-ER-91-93. Creditors further asserted Goldman's argument that she was protected by quasi-judicial immunity was meritless because Goldman had not and could not make the showing required for that defense in a BFD (first party) case. Specifically, this circuit rejects the defense unless the bankruptcy trustee satisfies a "**comfort order rule**" that requires the conduct at issue be within the scope of the trustee's authority and the trustee to have obtained bankruptcy court approval for the conduct after giving notice and candid disclosure. 2-ER-94:8-17; see, e.g., In re Yellowstone Mountain Club, LLC, 841 F.3d 1090, 1097 (9th Cir. 2016).

Goldman's "RND" arguments were replete with misrepresentations. **First,** the argument misrepresented the content of the 2011 RND. The RND was precatory in nature, requesting *court approval* of the RND. It **represented that Goldman would continue with her obligations if the RND were not approved**. See 2-ER-145 ("I request that I be discharged from any further duties as trustee"). The Court never closed the case or acted on the 2011 RND, which Goldman later

22

withdrew. See 2-ER-141 (withdrawing first RND).  **Second**, the 2011 RND was

not responsive to the issues in the complaint.  The complaint concerns issues that

did not exist in 2011 (e.g., rents Goldman failed to collect that did not exist until

the debtor began renting bankruptcy estate property around 2019-2020). See 2-ER-

134:22-24; 2-ER-137.  **Third,** because the issues in the complaint did not exist in

2011, the RND could not have deliberated upon them or candidly presented them

to the court in 2011.

The RND asserted Goldman had "made a diligent inquiry" into the facts, yet

it proposed that debtor Gilman be allowed to enjoy a "disability enhancement" of

nearly $ 40,000 atop a "basic" homestead exemption of $ 100,000. See 2-ER-145

(entry of 6/21/2011).  Creditors knew Goldman had not conducted a diligent

investigation because the transcripts of the two sessions of the meeting of creditors

showed she had not requested the debtor's medical records or conducted any

interrogation into the debtor's health let alone whether any of his medical

conditions had disabling impacts.  These factors caused the Creditors to initiate a

contested matter that necessarily challenged the RND.  See 2-ER-145 (docket

numbers 27-30).  This proceeding later established the RND was false. See In re

Gilman, 544 B.R. 184 (Bankr. C.D. Cal. 2016) (debtor not entitled to "disability

enhancement" to homestead exemption).  Another proceeding led to a similar

result. See 2-ER-143-144 (disallowance of exemptions claimed in assets not reflected in 2011 RND).

The bankruptcy court never *approved* the 2011 RND. In fact, its orders necessarily contradicted the factual assertions in the 2011 RND. See In re Gilman, 544 B.R. 184 (Bankr. C.D. Cal. 2016); 2-ER-143-144. Goldman was eventually forced to withdraw the 2011 RND. See 2-ER-141.

The filing of an RND does not in itself abandon property. Abandonment always requires court action. In re Reed, 940 F.2d 1317, 1321 (9th Cir. 1991); In re Chappell, 373 B.R. 73 (9th Cir. BAP 2007). To abandon property the trustee must give notice and an opportunity for hearing. 11 U.S.C. § 554(a). "[T]here is no abandonment without notice to creditors." In re Pena, 974 F.3d 934, 939 (9th Cir. 2020) (citation omitted).

Abandonment is seldom a burdensome procedure because the Code permits trustees to abandon estate property by giving notice of intent to do so and allowing an opportunity for a hearing. 11 U.S.C. § 554(a). The bankruptcy court below authorizes "streamlined" abandonment procedures in its local rules. See Central District of Cal. LBR 6007-1. Proper notice is essential. Pena, 974 F.3d at 939. The trustee's notice of intent must describe the property to be abandoned, including its address; state the basis upon which the property is being abandoned; and give notice that any objection and request for hearing must be filed and served

24

within 14 days after service of the notice.  LBR 6007-1(c)(1).   The 2011 did not

satisfy these requirements and was, apparently, never served on all persons listed

in FRBP 6007(a), which includes all creditors (not just those registered for

CM/ECF).  See 2-ER-145.  If followed, the "streamlined" abandonment procedure

gives rise to what might be called an "implied order." See In re Baroni, 643 B.R.

253, 274 (Bankr. C.D. Cal. 2022) ("order" encompasses a "command or direction

authoritatively given; rule or regulation" as well direction of court or judge entered

in writing but not included in judgment).  If there is an objection, the trustee must

show the property to be abandoned is burdensome or of inconsequential value and

benefit to the estate. See In re Johnston, 49 F.3d 538, 539 (9th Cir. 1995); In re

Blixseth, 2010 WL 716198, *10 (Bankr. D. Mont. Feb. 23, 2010).

An RND does nothing but establish a rebuttable presumption that the Court

can use as a predicate for discharging the trustee and closing a case.  See  Fed. R.

Bankr. P. 5009(a).  Nothing in Rule 5009 specifies the form of objection.  The

docket shows Plaintiffs necessarily objected to the trustee's 2011 RND starting

June 24, 2011.  See 2-ER-145.   Goldman cannot show she was discharged through

the closing of the case.

The bankruptcy court's tentative ruling was "to grant the Motion [to dismiss]

with "Dismissive Prejudice."  1-ER-44 (tentative ruling);1-ER-27:18.  That

tentative ruling asserted the claims for breach of fiduciary duty were time-barred

25

**and** "the chapter 7 trustee has quasi-judicial immunity" for "any negligence with respect to her identified discretionary acts (and decisions to refrain from taking action." 1-ER-44. It *added* ("and") that "plaintiffs have not adequately plead [sic] in their complaint that the chapter 7 trustee committed acts of gross negligence." See id.

Almost immediately after the hearing, Goldman submitted a conclusory proposed order granting the motion with prejudice. It did not set forth specific reasons for denying leave to amend. On June 9, 2022, the bankruptcy judge modified the proposed order rendering an order dismissing the complaint with prejudice (i.e., no leave to amend). 1-ER-24-25. The bankruptcy court asserted dismissal with prejudice was necessary based on "this Court's findings of fact and conclusions of law set forth on the record ... *including that Plaintiffs' causes of action for breach of fiduciary duty are time-barred pursuant to Cal. Code of Civil Procedure § 343."* 1-ER-25 (italics in original to show modification of proposed order).

The district court agreed that the bankruptcy court erred in its analysis of the statute of limitations. Its discussion of quasi-judicial immunity was limited to eighteen lines of text. 1-ER-22. It concluded: "[a]lthough Creditors' claim for relief for breach of fiduciary duty is not time-barred, **Appellee is entitled to quasi-judicial immunity**. Accordingly, the **Dismissal Order is AFFIRMED *in part***

26

and REVERSED *in part.* The case is REMANDED to determine whether amending the Complaint would be futile." 1-ER-23. A motion for reconsideration was denied (1-ER-22) and the bankruptcy court declined to remand to a judge in a different division by asserting Creditors' motion to that effect was too late. 1-ER-25.

## V.    SUMMARY OF ARGUMENT

The district court's "remand" to the bankruptcy court indicates the district court realized the bankruptcy court violated circuit law regarding the amendment of pleadings and, likely, knew the complaint set forth a plausible claim of gross negligence (which Creditors maintain is not required by circuit law).

This Court has jurisdiction because the district court's "remand" is **illusory**. The remand serves no purpose because the bankruptcy judge already determined that amendment would be futile. The remand is also illusory because the district court affirmed that Goldman was entitled to QJI.

QJI, like the judicial immunity from which it is derived, is an **absolute** immunity from suit. In re Castillo, 297 F.3d 940, 947 (9th Cir. 2002). The immunity is based on the immune party's function. Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435 (1993) (touchstone of judicial immunity's applicability has been "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights"; extension to non-judges is only

27

permitted when their judgments are "'functional[ly] comparab[le]' to those of judges"); Forrester v. White, 484 U.S. 219, 224 (1988).  The immunity is "sweeping" and therefore "strong medicine" because it serves critical policy.  It is intended to discourage collateral attacks on final judgments through civil suits and to promote the use of appellate procedures to correct error.  In re Castillo, 297 F.3d 940, 947 (9th Cir. 2002).  It is also designed to foster the independence of judges or quasi-judges. See id. at 949 (citation omitted).   Due to its sweep, the proponent of a claim of absolute immunity bears the burden of establishing that immunity is justified.  Antoine, 508 U.S at 432; Castillo, 297 F.3d at 947.  The showing must be made with respect to "the particular functions of the bankruptcy trustee at issue."  Castillo, 297 F.2d at 949.  Because it is absolute, when its application is established QJI furnishes immunity from suit regardless of whether the defendant was negligent or grossly negligent.

The bankruptcy and district courts killed Creditors action by holding Goldman was entitled to absolute immunity.  Both courts were wrong.  For quasi-judicial immunity to attach the trustee must, inter alia, obtain a valid order authorizing the trustee to do something that would otherwise violate a fiduciary duty.  Goldman never obtained such an order and made no showing to the contrary.  Quasi-judicial immunity does not apply to breach of fiduciary duty suits by beneficiaries because authority is governed by applicable statutes and common

28

law, including fiduciary duties.   That a trustee has no authority to abandon estate property or allow it to be wasted is demonstrated by the statute that requires court action for abandonment.  Preserving estate property is a non-discretionary matter of *administration.*

　　　　　"Dismissal of a complaint without leave to amend is improper unless it is **clear**, on de novo review, that the complaint could not be saved by any amendment.**"** Parents for Privacy v. Barr, 949 F.3d 1210, 1221 (9th Cir. 2020), cert. denied, 141 S. Ct. 894 (2020).  The district court failed to perform its supervisory duty of saying the bankruptcy court acted improperly.  Even if it were correct that the complaint was required to, but had not, plausibly alleged gross negligence, it was the duty of the district court to announce that it was not clear the complaint could not be saved.   The very fact the district court issued a "remand" shows it did not believe it was clear the complaint could not be saved.

The complaint did not require "saving."  The (California) cause of action for breach of fiduciary duty requires the plaintiff show a defendant trustee charged with failure to collect and protect property for beneficiaries failed to exercise **ordinary care**.  See, e.g., Bennett v. Williams, 892 F.2d 822, 823 (9th Cir. 1989). It does not require the plaintiff to plead or prove gross negligence.  Nothing in this circuit's law carves out a different rule for breach of fiduciary duty actions simply because the defendant is a bankruptcy trustee.  The potential for liability under the

29

ordinary care standard is the best means to assure administration.  See Mosser v. Darrow, 341 U.S. 267, 274 (1951); In re Cochise College Park, Inc., 703 F.2d 1339, 1357 (9th Cir. 1983) (rejecting deviation from traditional standard of liability that would condone slipshod administration).  In any event, the complaint showed gross negligence because the conduct alleged tracked the fact-pattern in In re Schooler, 725 F.3d 498 (5th Cir. 2013).

The attempts by lower courts to establish a "gross negligence" standard for trustee liability are misplaced.   Bankruptcy law generally accepts nonbankruptcy law.  If Congress felt it appropriate to do so it could have enacted statutory fiduciary duty law governing bankruptcy trustees.  Congress did not do so. Compare 29 U.S.C. § 1104 (utilizing "prudent man standard of care").   Nor did Congress adopt a proposal that it should require gross negligence to hold bankruptcy trustees personally liable.

More significantly, "[t]he cases in which federal courts may engage in common lawmaking are few and far between."  Rodriguez v. FDIC, 589 U.S. 132, 133 (2020).  Absent congressional authorization, common lawmaking must be "**necessary** to protect uniquely federal interests."  Id. at 136 (citations omitted, bold added).   Bankruptcy might be a federal interest, but trustee speculation that the bankruptcy system will collapse without a gross negligence rule does not show **necessity.**

While a plaintiff must plead a claim that plausibly supports relief, the plaintiff is not required to anticipate and negate possible affirmative defenses. Even if a given affirmative defense might apply, that possibility does not establish that the defendant can prove the defense.   To grant a motion to dismiss based on the argument a claim is barred by an affirmative defense, the defense must be shown from the allegations of the complaint or matters subject to judicial notice.  It must be shown that the affirmative defense **necessarily applies** and bars the claim with certainty.   Moreover, even if a defense **appears** from the allegations and matters subject to judicial notice, the motion to dismiss cannot be granted without granting leave to amend when it is possible the plaintiff may be able to allege **additional, non-contradictory facts** that will negate an otherwise apparently applicable affirmative defense.

Granting the motion to dismiss the complaint, and doing so without leave to amend, constituted error.   While bankruptcy trustees may sometimes engage in quasi-judicial functions they, like their historical forbears, also serve non-judicial administrative ("ministerial") functions.  Unlike judges and non-judicial actors who have generally received quasi-judicial immunity, bankruptcy trustees owe **fiduciary duties** to estate beneficiaries such as creditors.   Given those duties, in a breach of fiduciary duty case the trustee asserting quasi-judicial immunity **must** establish (1) the acts at issue were within the scope of the trustee's authority; (2)

31

the plaintiff had notice of the proposed acts; (3) the trustee candidly disclosed the proposed acts to the bankruptcy court; and (4) the bankruptcy court approved the acts. See, e.g., In re Yellowstone Mountain Club, LLC, 841 F.3d 1090, 1097 (9th Cir. 2016); Matter of Harris, 590 F.3d 730, 730, 742 (9th Cir. 2009); March et al., Cal. Practice Guide, Bankruptcy ¶ 10:180-181 (Rutter Group 2023).

The district court is remanding for the trial court to reconsider whether the allegations could be amended to show gross negligence when that is not an element of the claim; when the trustee's motion did not establish the omissions were within the scope of her authority; and when the trustee did not and could not establish the court approved the omissions.

## VI.    STANDARDS OF REVIEW

This Court reviews questions of its own jurisdiction de novo.    Hunt v. Imperial Merch. Serv's, Inc., 560 F.3d 1137, 1140 (9th Cir. 2009).

This Court reviews de novo the district court's decision on appeal from a bankruptcy court. In re Leite, 112 F.4th 1246, 1250 (9th Cir. 2024) citing In re JTS Corp., 617 F.3d 1102, 1109 (9th Cir. 2010).  It looks through the district court's ruling and reviews the bankruptcy court's order directly to determine whether the district court's decision was correct. See In re Lee, 889 F.3d 639, 644 (9th Cir. 2018) (citation omitted).  It necessarily applies the same standard of review that

32

would apply to the district court's review of the bankruptcy court decision. Leite, 112 F.4th at 1250 (citations omitted).

A trial court's dismissal of an action pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo.  Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am., 15 F.4th 885, 889 (9th Cir. 2021); Wochos v. Tesla, Inc., 985 F.3d 1180, 1197 (9th Cir. 2021);  Barker v. Riverside County Office of Ed. 584 F.3d 821, 824 (9th Cir. 2009); Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005). If a trial court denies leave to amend based on the futility of the amendment or inability to allege a valid cause of action, the court reviews the decision de novo. Kroessler v. CVS Health Corp., 977 F.3d 803, 807 (9th Cir. 2020). "Dismissal of a complaint without leave to amend is improper unless it is **clear**, on de novo review, that the complaint could not be saved by any amendment.**"** Parents for Privacy, 949 F.3d at 1221.

## VII.   ARGUMENT

### A.    Critical Legal Background

The filing of a bankruptcy petition gives rise to a "bankruptcy estate" that generally includes all the debtor's property. See 11 U.S.C. § 541(a).  Real property and rents arising from the use thereof are distinct types of property.  See 11 U.S.C. § 541(a)(6); In re Pena, 974 F.3d 934, 939 (9th Cir. 2020) (abandonment of real property did not operate as abandonment of rents for use of that property).

33

When the petition has been filed, a Chapter 7 trustee is assigned to the case to fulfill the statutory duties under 11 U.S.C. § 704. That trustee is the sole representative of the bankruptcy estate. 11 U.S.C. § 323(a); In re Zavala, 444 B.R. 181, 189-90 (Bankr. E.D. Cal. 2011). That trustee is also "a fiduciary of each creditor of the estate." In re Cochise College Park, Inc., 703 F.2d 1339, 1357 (9th Cir. 1983). The trustee "must represent all creditors without partiality." In re AFI Holding, Inc., 530 F.3d 832, 844 (9th Cir. 2008).

The Chapter 7 trustee "has the duty of exercising reasonable care in the custody of the fiduciary estate unless relieved of such duty by agreement, statute, or order of court." U.S. ex rel. Willoughby v. Howard, 302 U.S. 445, 450 (1938). The trustee must preserve assets of the estate while exercising the care and diligence of an ordinarily prudent person under similar circumstances. Bennett v. Williams, 892 F.2d 822, 823 (9th Cir. 1989); In re Rigden, 795 F.2d 727, 730, 740 (9th Cir. 1986); In re Kile, 415 B.R. 723, 728 (Bankr. D. Ariz. 2009) ("fiduciary duty to all creditors of the estate to protect their interests against dissipation of any assets of the estate"). This duty is one that "can never be delegated, and for which the trustee must *always* be held accountable." In re Abraham, 163 B.R. 772, 779 (Bankr. W.D. Tex. 1994) (italics in original). "The trustee and only the trustee is ultimately responsible for the **administration** of the estate, including most significantly the safeguarding and responsible disposition of estate assets …." Id.

34

(emphasis supplied). The fiduciary duty to preserve assets includes a continuing duty to monitor the assets in a reasonable manner. See, e.g., Tibble v. Edison Int'l, 575 U.S. 523, 529-30 (2015).

The trustee may address problematic assets through the process of **abandonment.** See 11 U.S.C. § 554. If trustees could abandon estate assets unilaterally, they could violate their fiduciary duties with impunity. Not surprisingly, abandonment under Section 554 always requires court action. In re Reed, 940 F.2d 1317, 1321 (9th Cir. 1991) ("three ways in which a trustee can abandon property, all of which require court action…").

Filing a "report of no distribution" ("RND"), sometimes called a "no asset report," does not itself result in abandonment. An RND cannot result in the abandonment of property unless the court closes the case. See 11 U.S.C. § 554(c); Reed, 940 F.2d at 1321 (citations omitted). The latter type of abandonment is sometimes termed a "technical abandonment." Just Film, Inc. v. Merchant Services, Inc., 873 F. Supp. 2d 1171, 1176 (N.D. Cal. 2012).

A leading resource for trustees warns that "[t]he trustee who does not act prudently to maintain and preserve the value of the property of the estate will be subject to surcharge by the bankruptcy court." See Maschmeyer, P. & Marinas, F., Collier's Handbook for Trustees and Debtors in Possession ¶ 10.03[5] at 10-29 to 10-30 (LexisNexis 2020). It advises trustees that if they are not going to

35

abandon estate assets they should give full and fair notice of their intention to repair those assets, setting forth all the facts and costs involved, or their intention to allow the assets to deteriorate without making repairs**.** See id.

**B.     Circuit Law Recognizes Trustees Sued for Breach of Fiduciary Duty Can Be Liable for Simple Negligence.  It is the Traditional Standard for Trustee Liability to Beneficiaries, Conforms to Supreme Court Caselaw, and Promotes Careful Administration.  Judicial Attempts to Require Gross Negligence Constitute an Improper Attempt to Legislate.**

Historically, bankruptcy has been a creditor remedy through liquidation processes.  Only comparatively recently has bankruptcy come to be seen as a debtor remedy through devices like voluntary petitions and reorganizations. See generally In re Marshall, 721 F.3d 1032, 1058 (9th Cir. 2013) (opinion of Bufford, J. from lower court); C. Tabb, The History of the Bankruptcy Laws of the United States, 3 Am. Bankr. Ins. L. Rev. 5, 7, 9 (1995).  Creditors are not aware of any scholars suggesting bankruptcy laws were conceived, like some New Deal program, as a job creation remedy for an underemployed, ever-proliferating class of "bankruptcy professionals."  Nevertheless, bankruptcy has become big business.

Bankruptcy trustees and their allies form the bigger part of the "bankruptcy ring," the group of repeat players in the bankruptcy process.[6]  Trustees and their

---

[6] Congress has long recognized the problem of systematic bias in favor of the "bankruptcy ring."  See, e.g., In re Plaza de Diego Shopping Ctr., Inc., 911 F.2d 820, 828 (1st Cir. 1990); Dougherty v. Capitol Cities Commc'ns, Inc., 631 F. Supp. 1566, 1571– 72 (E.D. Mich. 1986).

allies argue trustees should not be personally liable for misconduct except when it amounts to gross negligence (or worse).   An attempt to obtain legislation to that effect, which would have defined gross negligence as "reckless indifference or deliberate disregard of the trustee's fiduciary duty," failed in Congress after academic dissent and political opposition.  See In re Continental Coin Corp., 380 B.R. 1, 4-5 (Bankr. C.D. Cal. 2007).

Not to be deterred, the trustee lobby has pressed its confreres in the bankruptcy courts to adopt the failed proposal. See generally id.   They advance "Chicken Little" arguments (i.e., the bankruptcy system will fall if trustees do not get the protection of a "gross negligence" rule) even though those arguments are contradicted by the fact the trustees have chosen to enter the lucrative market for "trustee services" without such a rule.  The bankruptcy ring keeps mum about the benefits trustees obtain through the Barton doctrine (which generally means cases are decided by a sympathetic member of the ring whose factual findings cannot be easily reversed).  The bankruptcy ring is reluctant to concede that trustees are free to purchase insurance (multiple policies, if needed) or with little effort can seek "comfort orders" that provide them with complete immunity.   The bankruptcy ring seeks to eviscerate this Court's precedents, which protect creditors.  The ring argues those precedents can be ignored because they are "just dicta."

37

But that is not so.   The Supreme Court recognized that bankruptcy trustees may be liable for breach of **ordinary care**.  See U.S. ex rel. Willoughby v. Howard, 302 U.S. 445, 450 (1938) ("[E]very trustee… has the duty of exercising **reasonable care** in the custody of the fiduciary estate unless relieved…).  Mosser v. Darrow, 341 U.S. 267 (1951), explained why the common law of fiduciary duty allows liability for simple negligence:   "Trusteeship is serious business and is not to be undertaken lightly or so discharged.  The most effective sanction for good administration is personal liability for the consequence of forbidden acts." Id. at 274.  Congress modeled the 1978 Bankruptcy Code on the common law of trusts.  Shortly thereafter this Court rejected the argument that something beyond simple negligence should be required for trustee liability.  See In re Cochise College Park, Inc., 703 F.2d 1339, 1357 (9th Cir. 1983).  This Court is well-aware that "attempts by faithless trustees to avoid their obligations continue, and new excuses are regularly erumpent."  In re Ferrante, 51 F.3d 1473, 1480 (9th Cir. 1995).

Bankruptcy law generally takes as a given existing nonbankruptcy law.   As pertinent here, that means the common law of trusts.   If Congress felt it appropriate to do so it, it could have enacted statutory federal fiduciary duty law.  Cf. See 29 U.S.C. § 1104 (utilizing "prudent man standard of care").   It did no such thing.

38

It is improper for thebankruptcy courts to try to create a federal common law of fiduciary duty that provides special advantages to bankruptcy trustees.  "The cases in which federal courts may engage in common lawmaking are few and far between."  Rodriguez v. FDIC, 589 U.S. 132, 133 (2020).  Judicial lawmaking in the form of federal common law plays a necessarily modest role under a Constitution that vests the federal government's "legislative Powers" in Congress and reserves most other regulatory authority to the States. Id. at 136. There is no federal general common law. See id. (citation omitted).  "[B]efore federal judges may claim a new area for common lawmaking, strict conditions must be satisfied." Id.  One of the most basic is that, absent congressional authorization, common lawmaking must be "**necessary** to protect uniquely federal interests." Id. (citations omitted, bold added).  Bankruptcy might be a uniquely federal interest, but Supreme Court and circuit precedent establishes that doomsday predictions do not show any **necessity** to create a federal common law rule at the urging of trustees. It is established that the liability concerns of bankruptcy trustees can be satisfied through comfort orders (and other means).  See Mosser v. Darrow, 341 U.S. 267, 274-75 (1051).

**C.     Creditors Stated a Plausible Claim for Breach of Fiduciary Duty.  They were Not Required to Plead Gross Negligence, but the Facts Alleged Established Gross Negligence under Schooler.**

39

While bankruptcy trustees may be instrumental to the bankruptcy process, the law imposes fiduciary duties on them to protect creditors. Breach of these duties gives rise to a cause of action for breach of fiduciary duty. "Gross negligence" is not an element of a California cause of action for breach of fiduciary duty. E.g., Borisoff v. Taylor & Faust, 33 Cal. 4th 523, 531 (2004) (citations omitted) (indicating fiduciary's liability based on failure to exercise 'that degree of prudence and diligence which a man of ordinary judgment would be expected to bestow upon his own affairs of a like nature'); accord Estate of Beach, 15 Cal. 3d 623, 630-31 (1975) (citations omitted) (same); Knutson v. Foster, 25 Cal. App. 5th 1075, 1093 (2018) (breach of fiduciary duty can be based on negligence or fraud); Estate of Gump, 1 Cal. App. 4th 582, 595 (1991) (breach of trust through negligent failure to protect trust property).

The argument Creditors' complaint failed to allege gross negligence is a red herring because Creditors alleged it even though "gross negligence" is not an element of the cause of action. Moreover, the Creditors did not rely on labels or conclusory allegations and their allegations paralleled those in In re Schooler, 725 F.3d 498 (5th Cir. 2013), which found gross negligence on the same fact-pattern. See supra (discussing Schooler and complaint paragraphs 23, 27-28, 29, 34, and 41).

40

And Creditors did more.  Not expecting impartiality from the bankruptcy judge, Creditors expressly requested leave to amend in the event Goldman's motion was granted. <u>See</u> 2-ER-103.  Creditors were confident they could add consistent allegations plausibly suggesting malicious conduct by the trustee. Indeed, Goldman's motion suggested an amendment.    There could be no dispute that the 2011 RND represented that Goldman would soldier on with her fiduciary duties if the RND were not accepted.   Goldman's motion to dismiss, however, asserted that Goldman had used her 2011 RND to give notice she would not fulfill her duty to protect estate property.   That shocking argument amounted to an admission Goldman had misled the beneficiaries about material facts.   It would itself establish a breach of fiduciary duty through constructive fraud.  <u>Cf.</u> <u>Mark Tanner Constr. v. Hub Int'l Ins. Servs.</u>, 224 Cal. App. 4th 574, 588 (2014); <u>Prakashpalan v. Engstrom, Lipscomb & Lack,</u> 223 Cal. App. 4th 1105 (2014).

**D.    A Cause of Action is not Insufficiently Pled Merely because a Defendant Might, in the Abstract, be Able to Establish an Affirmative Defense. The Affirmative Defense Must Apply with No Uncertainty.**

A defendant may move to dismiss a complaint for failure to state a claim when plaintiff has made allegations that, on their face, disclose some absolute defense or bar to recovery. <u>See</u> Stevenson & Fitzgerald, Cal. Practice Guide: Federal Civil Procedure Before Trial ¶ 9:193.5 (Rutter Group 2024) ("Stevenson")

41

citing, inter alia, Weisbuch v. County of Los Angeles, 119 F.3d 778, 783, n. 1 (9th Cir. 1997).  Such defenses, however, do not warrant dismissal pursuant to Rule 12(b)(6) except in "rare cases." Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014).  That is because the defendant usually bears the burden of pleading and proving an affirmative defense and the plaintiff is not required plead the "subject of an anticipated affirmative defense."  See Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 902 (9th Cir. 2013).  Thus, a Rule 12(b)(6) dismissal on the basis of an affirmative defense is proper only where "the allegations in the complaint suffice to establish the defense." Sams v. Yahoo! Inc., 713 F.3d 1175, 1179 (9th Cir. 2013); Williams-Sonoma, Inc. v. Amazon.com, Inc., 627 F. Supp. 3d 1072, 1079 (N.D. Cal. 2020).  "To grant a Rule 12(b)(6) motion on the basis of an affirmative defense, the facts establishing that defense must (1) be **definitively ascertainable** from the complaint and other allowable sources of information" **and (ii) "suffice to establish the affirmative defense with certitude**." Stevenson ¶ 9:193.5 citing, inter alia, ASARCO, LLC v. Union Pac. R.R. Co., 765 F.3d 999, 1004 (9th Cir. 2014) (emphasis supplied).

**E.     The Bankruptcy Court Improperly Granted the Motion to Dismiss.  Goldman Did Not Show Satisfaction of Circuit Requirements for the Defense.  Quasi-Judicial Immunity is Not a Defense to Breach of Fiduciary Duty without an Order Approving the Breach after Candid Disclosure**

Judicial immunity is based on the **judicial function** and is absolute without regard to a judge's title or culpability (negligent, wanton, malicious).   This is

42

"strong medicine," justified only when the danger of being distracted from the effective performance of their duties is very great. <u>Forrester v. White</u>, 484 U.S. 219, 230 (1988). But it has a powerful rationale. It protects judicial independence and encourages appellate procedures, rather than collateral attack, as the standard for correcting judicial error. <u>Id.</u> at 225-26.

People who are not judges may serve judge-like functions and the same policies may apply. QJI has been extended to these people. People not performing judge-like functions should not obtain an absolute immunity like judges because the policy rationale for absolute immunity does not apply.

Bankruptcy trustees differ from judges and quasi-judges in two significant ways. First, bankruptcy trustees owe fiduciary duties to a group of people (creditors and shareholders) who might serve as plaintiffs. Second, bankruptcy trustees engage in both administrative-ministerial functions and "judge like" functions and therefore do not necessarily qualify for QJI.

Circuit law establishes that bankruptcy trustees cannot enjoy qualified immunity, at least in BFD suits, unless the trustee shows it attaches because (1) the acts at issue were within the scope of the trustee's authority; (2) the plaintiff had notice of the proposed acts; (3) the trustee candidly disclosed the proposed acts to the bankruptcy court; and (4) the bankruptcy court approved the acts. <u>See</u>, <u>e.g.</u>, <u>In re Yellowstone Mountain Club, LLC</u>, 841 F.3d 1090, 1097 (9th Cir. 2016); <u>Matter</u>

43

of Harris, 590 F.3d 730, 730, 742 (9th Cir. 2009); Bennett v. Williams, 892 F.2d 822, 823 (9th Cir. 1989); In re Continental Coin Corp., 380 B.R. 1, 15 (Bankr. C.D. Cal. 2007) (admitting the rule is an "absolute requirement").

As the Sixth Circuit has explained, "[i]t is generally accepted, albeit under varying rationales, that **quasi-judicial immunity does not extend to claims against a trustee by beneficiaries of the estate for breach of fiduciary duty**." In re McKenzie, 716 F.3d 404, 413 (6th Cir. 2013) (emphasis added). The only way to secure immunity in those cases is to obtain prior court approval of decisions. See id. citing In re Kashani, 190 B.R. 875, 883-884 (9th Cir. BAP 1995). McKenzie held that the Sixth Circuit would not require prior court approval for QJI when the suit against the trustee is brought **by a third-party.** McKenzie, 716 F.3d at 414. However, this rule continues to govern immunity claims in breach of fiduciary duty (first party) cases there and has not been dropped in the Ninth Circuit.

The authors of a prominent practice guide agree on this analysis. They write that, subject to one exception:

> the rubric that the trustee has derived judicial immunity should, in principle, have no application to cases involving the trustee's breach of fiduciary duty (care or loyalty) to the beneficiaries of the estate.

Maschmeyer, P. & Marinas, F., Collier's Handbook for Trustees and Debtors in Possession ¶ 4.08 at 4-31 (LexisNexis 2020) ("Collier's"). The exception is this:

> If, before breaching his duty of care or loyalty, the trustee makes a full and fair disclosure to the court with notice to all parties in interest, and the court knowingly makes an order permitting the trustee to act in a way which would breach his duty of care or loyalty, the trustee should be able to rely on the court order by way of defense to a suit brought for conduct expressly permitted by the court order.

Id.  In contrast,

> when the trustee is sued by someone other than a creditor (i.e. a third-party non-beneficiary) to whom no fiduciary duty is owed… the trustee ought, as a matter of policy, to be able to defend himself on the grounds that he was acting within the scope of his authority and thereby assert the defense of derived judicial immunity.

Id. at 4-31-32.

## F.    Goldman Had No Discretion and Is Not Entitled to Qualified Immunity under Any Standard.   Circuit Law Limits Bankruptcy Trustee Assertion of Quasi-Judicial Immunity.

Bankruptcy trustees are charged with performing non-judicial ("administrative" or "ministerial") and judicial functions.   As a result, bankruptcy trustees may be immune for some but not all functions. McKenzie, 716 F.3d at 412. The proponent of a claim of absolute immunity bears the burden of establishing that immunity is justified.  Antoine, 508 U.S at 432; Castillo, 297 F.3d at 947.    The showing must be made with respect to "the particular functions of the bankruptcy trustee at issue."  Castillo, 297 F.2d at 949. The court must consider "the effect that exposure to particular forms of liability would likely have on the

45

appropriate exercise of those functions." <u>McKenzie</u>, 716 F.3d at 412 <u>citing</u>

<u>Forrester v. White</u>, 484 U.S. 219, 224 (1988).

The complaint alleged breach of fiduciary duty for failing to collect and

protect real estate and rents.  The preservation of estate property goes to the heart

of a Chapter 7 trustee's function, which is the duty to gather property that can be

used to pay creditors. <u>See</u> 11 U.S.C. § 704(a)(1).  These preservation duties are

administrative. <u>See</u> <u>In re Castillo</u>, 297 F.3d 940, 949 (9th Cir. 2002) <u>citing</u> Charles

J. Tabb, The History of the Bankruptcy Laws in the United States, 3 Am. Bankr.

Ins. L. Rev. 5 (1995) (distinguishing "trustee-like activities such as collecting,

liquidating, and distributing the debtor's property to creditors" from "more

traditional judicial activities"); <u>cf.</u>  <u>In re Abraham</u>, 163 B.R. 772, 779 (Bankr. W.D.

Tex. 1994) (trustee is responsible for the *administration* of the estate, including

most significantly the safeguarding and responsible disposition of estate assets).

Actions that "extend beyond delegated statutory authority" are *ultra vires*

actions.  <u>See</u> <u>Murphy Co. v. Biden</u>, 65 F.4th 1122, 1129 (9th Cir. 2023), <u>cert.</u>

<u>denied,</u> 144 S. Ct. 1111 (2024).  Immunity does not extend to such actions. <u>See</u>

<u>Dalton v. Specter</u>, 511 U.S. 462, 472 (1994) <u>citing</u> <u>Larson v. Domestic & Foreign</u>

<u>Com. Corp.</u>, 337 U.S. 682, 689-90, 695 (1949).  Trustees have *no discretion* to

allow estate property to be stolen or wasted.   It is their ministerial duty to collect

and protect property promptly.  Section 704 indicates that the duty to collect

46

property is mandatory. Section 554 of the Bankruptcy Code establishes that trustees have no authority to abandon property or to frustrate creditors by permitting it to be dissipated or wasted by a debtor. Abandonment of estate property, or its functional equivalent, always requires some form of court action. See In re Reed, 940 F.2d 1317, 1323 (9th Cir. 1991). Trustees need express court approval or unanimous creditor consent, after full and fair disclosure, to violate that duty.

Fiduciary duties operate as a limitation on authority. Immunity undermines the purpose of imposing fiduciary duties. To qualify for absolute immunity, the function performed must be a judicial act with '**a sufficiently close nexus to the adjudicative process**." Burton v. Infinity Capital Management, 862 F.3d 740, 747-78 (9th Cir. 2017). A trustee does not reach that point if the trustee has not invoked the procedures for abandonment. This is a first party BFD suit and Goldman has no QJI defense. She cannot show she met the requirements set forth in Yellowstone. She was not acting within the scope of her authority and the Court may take judicial notice she never showed she requested or obtained any orders authorizing her to permit waste and theft of the estate property that is the subject of the adversary complaint.

47

**G.    The Bankruptcy Court Improperly Denied Leave to Amend.**

Leave to amend is liberally granted because an apparently defective complaint can often be amended through additional, non-contradictory allegations that show a claim is not futile. See United States v. Corinthian Colleges, 655 F.3d 984, 995 (9th Cir. 2011).  In dismissing for failure to state a claim, "'a [trial] court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" Ebner v. Fresh, Inc., 838 F.3d 958, 963 (9th Cir. 2016) (citations omitted); Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986).  "Dismissal of a complaint without leave to amend is improper unless it is clear, on de novo review, that the complaint could not be saved by any amendment." Parents for Privacy, 949 F.3d at 1221.

The first complaint did not need "saving" because a cause of action for breach of fiduciary duty does not require a showing of gross negligence and, even if it did, the alleged facts, taken as true, showed it.  Even if a BFD claim against a trustee requires a showing of gross negligence, the district court's "remand" to the bankruptcy court necessarily admits it was not "clear" the complaint could not be "saved."   The bankruptcy court's denial of leave to amend constituted error.

Even if an affirmative defense might seem to apply, a plaintiff might be able to provide additional, consistent allegations that render fully plausible a supposedly

"implausible" claim.  Thus, it is almost always indefensible for a trial court to deny leave to file a **first** amended complaint.  If the plaintiff files an amended complaint, the judge determines the issue of futility based on **the amended pleading.**

### H.      This Court Should Reverse and Remand to a New Judge.

The bankruptcy court's extraordinary treatment of the complaint reflects a problem with the Barton doctrine, which typically forces BFD suits to be brought before bankruptcy judges with longstanding relationships with trustee defendants. Those judges may even share some responsibility for trustee misconduct. Especially concerning here is the tenor of the defendant's motion to dismiss.  It indicated Goldman was aware of, and eager to exploit, judicial passions. Cf. In re Gilman, 887 F.3d 956 (9th Cir. 2018) (vacating bankruptcy judge's order for incorrect application of homestead exemption law).   No less concerning is the result:  that "rare" decision to dismiss an action without even granting leave to amend.

Appellate courts may order that a matter be re-assigned to a new judge on remand.  E.g., United Nat. Ins. Co. v. R&D Latex Corp., 242 F.3d 1102, 1118 (9th Cir. 2001) citing 28 U.S.C. § 2106.   Reassignment may be especially appropriate when the trial judge sits as a factfinder.  See United States v. Robin, 553 F.2d 8, 10 (2d Cir. 1977) (en banc).   This Court considers three factors:

- whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected;

- whether reassignment is advisable to preserve the appearance of justice; and

- whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.[7]

See, e.g., D'Lil v. Best Western Encina Lodge & Suites, 538 F.3d 1031, 1041 (9th Cir. 2008). An affirmative finding on the second factor is sufficient to support a remand to a different judge. United States v. Reyes, 313 F.3d 1152, 1159 (9th Cir. 2002).

An objective observer might reasonably question the impartiality of the bankruptcy judge based solely on this record, past history, and the peculiar fact that Goldman appears regularly before the judges in the Woodland Hills Division of the subject bankruptcy court. Creditors submit that in all cases seeking the personal liability of bankruptcy trustees the lower courts hearing appeals from the bankruptcy court should be directed to consider orders reassigning the cases being remanded-- preferably to judges in different divisions of the bankruptcy court.

---

[7] The bankruptcy court has not invested significant resources in this proceeding because this proceeding concerns the post-petition acts or omissions of the trustee (not a debtor) and the bankruptcy court dismissed it almost immediately. Reassignment, then, would not entail significant waste or duplication. In contrast, re-assignment would greatly serve the appearance of fairness.

50

Re-assignment will almost never entail waste and duplication out of proportion to the benefit of preserving the appearance of fairness when the matter being remanded was ordered dismissed at the pleading stage.

## VIII. CONCLUSION

Defendant Goldman's motion to dismiss was without merit, which is why her motion relied on ad hominem attacks, ignored the very precise claims that had been asserted, and attempted to argue about an un-approved 2011 RND.   Appellee Goldman knows she did not and never could show she obtained an order authorizing her to permit the deterioration and theft of estate property.   The Creditors' complaint should never have been dismissed, let alone without leave to amend.  What remains of the bankruptcy court decision should be reversed, remanded, and re-assigned to a judge in a different division of the Central District Bankruptcy Court.


DATE:        November 13, 2024

                                        By:    /s/ Charles Q. Jakob
                                               Charles Q. Jakob
                                               Attorney for Creditors

## Form 8. Certificate of Compliance for Briefs

### 9th Cir. Case Number    <u>24-2249</u>

I am the attorney ~~or self-represented party~~.

**This brief contains 12,094 words** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ x ] complies with the word limit of Cir. R. 32-1.

[   ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:**  <u>/s/ Charles Q. Jakob</u>          **Date:**      <u>November 13, 2024</u>

52