Case No. 24-2249
_____

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

---

TAMMY R. PHILLIPS and TAMMY R. PHILLIPS, A PROF. LAW CORP.

                                         Appellants-Creditors

v.

AMY L. GOLDMAN,

                                         Appellee-Trustee

_____

Appeal from the U.S. District Court,
C.D. Cal. No. 2:22-cv-04450-MWF
(Underlying Case No. 1:22-ap-01014 VK, Bankr. C.D. Cal.)

---

**PHILLIPS APPELLANTS' SUPPLEMENTAL BRIEF
RE: EN BANC REVIEW**

---

CHARLES Q. JAKOB
Cal. State Bar No. 166205
7144 Fair Oaks Blvd., Suite 3A
Carmichael, CA  95608
(916) 900-4244

Attorney for Appellants-Creditors PHILLIPS & CORPORATION

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................1

II. CREDITOR RESPONSE .......................................................................1

III. CONCLUSION .......................................................................................9

Certificate of Compliance..............................................................................10

# TABLE OF AUTHORITIES

Page(s)

### Federal Cases

Cassirer v. Thyssen-Bornemisza Collection Found.,
　596 U.S. 107 (2022)......................................................................................2

In re Cochise College Park, Inc.,
　703 F.2d 1333 (9th Cir. 1983) ...................................................................3, 5

In re Continental Coin Corp.,
　380 B.R. 1 (Bankr. C.D. Cal. 2007) ......................................................*passim*

Matter of Harris,
　590 F.3d 730 (9th Cir. 2009) ........................................................................8

In re Holywell Corp.,
　93 B.R. 780 (S.D. Fla. 1988), aff'd sub nom. Miami Ctr. v. Bank of
　New York, 881 F.2d 1086 (11th Cir. 1989) ..................................................4

Jo Ann Howard and Associates, PC. v. Cassity,
　868 F.3d 637 (8th Cir. 2017) ........................................................................4

In re Leite,
　112 F.4th 1246 (9th Cir. 2024) .....................................................................4

i

In re Maue,
    611 B.R. 367 (Bankr. W.D. Wash. 2019)..............................................................4

In re McKenzie,
    716 F.3d 404 (6th Cir. 2013) .............................................................................7, 9

Mosser v. Darrow,
    341 U.S. 267 (1951)..................................................................................................6

In re Reed,
    940 F.2d 1317 (9th Cir. 1991) ..............................................................................8

Rodriguez v. FDIC,
    589 U.S. 132 (2020)..................................................................................................5

Scalia v. Emp. Sols. Staffing Grp., LLC,
    951 F.3d 1097 (9th Cir. 2020) ..............................................................................5

In re Schield,
    242 B.R. 1 (Bankr. C.D. 1999) ..............................................................................5

U.S. v. Hunter,
    101 F.3d 82 (9th Cir. 1996) ..................................................................................3

U.S. v. White Mountain Apache Tribe,
    537 U.S. 465 (2003)..................................................................................................4

U.S. ex rel. Willoughby v. Howard,
    302 U.S. 445 (1938)..................................................................................................4

In re Yellowstone Mountain Club, LLC,
    841 F.3d 1090 (9th Cir. 2016) ..............................................................................8

**Other State Cases**

Harding v. Taylor,
    536 P.3d 38 (Ct. App. Utah 2023)........................................................................4

**Federal Statutes**

Bankruptcy Act of 1898................................................................................................4

**Other Authorities**

Cir. R. 32-1 ................................................................................................... 10

Cir. R. 32-2(a) .............................................................................................. 10

Fed. R. App. P. 32(a) ................................................................................... 10

Fed. R. App. P. 32(f) .................................................................................... 10

March et al., Cal. Practice Guide, Bankruptcy (Rutter Group 2023) ......... 8

National Bankruptcy Review Commission, Bankruptcy: The
    Next Twenty Years, Final Report (October 20, 1997)……………………2, 3

## I.     INTRODUCTION

Without seeing a decision, Appellants do not know whether they would seek a rehearing en banc.   However, Appellants Tammy R. Phillips and Tammy R. Phillips, a Professional Law Corporation ("Creditors") submit this brief in response to this Court's Order of August 19, 2025.   Their statements apply to a Chapter 7 (liquidation) bankruptcy case because the role of a trustee in cases under other chapters may be different and courts may issue parsimonious decisions.

As the Court is aware, Creditors' counsel has had to vacate his office.   That process was not completed until about 8 a.m. on October 1, 2025.   Creditors' counsel is not working on his ordinary computer and will probably have to serve an amended brief showing tables of contents and authorities.

## II.     CREDITOR RESPONSE

The standard of care required for trustee liability for breach of fiduciary duty (BFD) is an element of the cause of action for BFD.   That cause of action is a state law claim.

In re Continental Coin Corp., 380 B.R. 1 (Bankr. C.D. Cal. 2007) ("CC") has caused confusion by conflating quasi-judicial immunity (QJI), which is an affirmative defense, with the elements of a plaintiff's BFD cause of action. Suggestions that a trustee has immunity unless the trustee's conduct was grossly

1

negligent or worse misunderstand the QJI defense. Like judicial immunity, QJI must be an absolute defense in which state of mind is irrelevant.

Arguments about a trustee's degree of culpability are actually an attempt to displace state law through the development of a federal common law BFD cause of action that requires a plaintiff, after navigating the Barton doctrine, to show gross negligence to establish a cause of action. These efforts amount to improper judicial legislation. "**Judicial creation of federal common law to displace state-created rules must be 'necessary to protect uniquely federal interests.'**" Cassirer v. Thyssen-Bornemisza Collection Found., 596 U.S. 107, 116–17 (2022) (citation omitted).

Goldman relies on CC, but not that portion of the decision that indicates she was required to obtain a "comfort order." See CC, 380 B.R. at 15 (comfort order rule an "absolute requirement"). She relies on it because it adopts a proposal by the National Bankruptcy Review Commission ("NBRC"). That proposal apparently came from the National Association of Bankruptcy Trustees and was especially concerned about trustee liability for environmental liabilities arising under CERCLA and like statutes. See NBRC, Bankruptcy: The Next Twenty Years, Final Report at 859-60 and id. nn. 2191-2192 (October 20, 1997) (hereafter "NBRC Final Report") (available on Google Docs). The NBRC understood the

2

Second, Ninth, and Eleventh Circuits had held the standard of liability to be **simple negligence**. Id.

CC adopts the NBRC proposal by asserting stare decisis is not an obstacle to doing so. CC argues In re Cochise College Park, Inc., 703 F.2d 1333 (9th Cir. 1983), did not actually hold that simple negligence is sufficient to hold bankruptcy trustees liable for breach of fiduciary duty. This assertion is contrary to the common understanding of the case including, ironically, the understanding of the **NBRC!**

Goldman's reliance on CC is misplaced. CC was wrongly decided for several reasons.

First, the CC arguments about the holding of Cochise are immaterial. They are literally **distinctions that make no difference**. Cochise was not written on a blank slate. The Cochise panel was constrained by Supreme Court decisions and the interpretation of federal statutes. **The same is true for this panel and this Court sitting en banc.**

Second, CC ignored longstanding precedent governing legislative construction. Congress is presumed to be aware of existing law – including the common law and relevant prior judicial decisions-- when it enacts later legislation. E.g. U.S. v. Hunter, 101 F.3d 82, 85 (9th Cir. 1996) citing Atomic Corp. v. Miller, 486 U.S. 174, 184-85 (1988). Thus, when enacting the 1978 Bankruptcy Code

3

Congress is presumed to have been familiar with the common law governing trustee breach of breach of fiduciary duty. The simple negligence standard conforms to the common law of trusts. See U.S. v. White Mountain Apache Tribe, 537 U.S. 465, 475 (2003) (citations omitted); Jo Ann Howard and Associates, PC. v. Cassity, 868 F.3d 637, 645 (8th Cir. 2017); In re Maue, 611 B.R. 367, 385 (Bankr. W.D. Wash. 2019); Harding v. Taylor, 536 P.3d 38, 59 (Ct. App. Utah 2023).

Moreover, addressing the Bankruptcy Act of 1898, the Supreme Court held that bankruptcy trustees were governed by the ordinary care standard. See U.S. ex rel. Willoughby v. Howard, 302 U.S. 445, 450 (1938) (citations omitted); In re Holywell Corp., 93 B.R. 780, 783 (S.D. Fla. 1988), aff'd sub nom. Miami Ctr. v. Bank of New York, 881 F.2d 1086 (11th Cir. 1989). Willoughby may predate the 1978 Bankruptcy Code, but without a clear congressional indication to the contrary this Court presumes Congress did not intend to change pre-existing bankruptcy law or practice. In re Leite, 112 F.4th 1246, 1250 (9th Cir. 2024) (citations omitted). Moreover, the refusal of Congress to adopt the NBRC proposal for a "gross negligence" standard for liability is also significant. **It indicates that CC is simply "judicial legislation"** -- the judicial adoption of standards that **Congress declined the adopt.**

4

CC disregards Cochise and creates a federal common law BFD cause of action requiring "gross negligence" by the defendant (or worse). The subject matter, however, does not consist of controversies between states, admiralty matters, or foreign relations. Nor does it involve any sort of congressional invitation to make federal common law. While federal courts have the authority to make federal common law to protect a unique federal interest, that authority only exists when a **federal rule of decision is necessary to do so.** See Rodriguez v. FDIC, 589 U.S. 132, 136 (2020); Scalia v. Emp. Sols. Staffing Grp., LLC, 951 F.3d 1097, 1105 (9th Cir. 2020) (citation omitted).

There is no such necessity. CC is founded upon alarmist ("Chicken Little") arguments that one typically hears from interest groups (like the NABT) eager to advance their self-serving agenda.

The major "Chicken Litte" argument in CC asserts that the bankruptcy system will collapse if bankruptcy trustees can be held liable for simple negligence because nobody will serve as a trustee under such circumstances. The argument is nothing but speculation. It is also contradicted by experience. People have been willing to serve as bankruptcy trustees even in jurisdictions that have deemed trustees subject to a simple negligence liability standard. **Goldman herself became a trustee something like eight years before the 2007 decision in CC!** See In re Schield, 242 B.R. 1 (Bankr. C.D. 1999).

More significantly, the argument is contradicted by case law. There is no "necessity" because trustees may shield themselves from personal liability through the purchase of insurance and obtaining "comfort orders." See Mosser v. Darrow, 341 U.S. 267 (1951).

CC slips in a second Chicken Little argument. It **vaguely suggests** that the bankruptcy system will collapse as judges like the author of CC will be overwhelmed by motions for comfort orders. CC, however, does not point to evidence that the bankruptcy courts collapsed between 1983 and 2007.

It is said that most Chapter 7 cases are "no asset" cases. For financial reasons, persons theoretically interested in such cases typically do not get involved. As Appellants previously explained with respect to the facts of this particular case, the relevant legal authorities already require trustees to obtain court approval (or consent of interested parties) for abandonment decisions. Ordinarily a trustee need not obtain any "comfort order" because it will be sufficient to give notice of an intent to abandon property. No hearing takes place unless someone (1) goes to the time and expense of interposing an objection; and (2) risks sanctions or professional discipline for filing unwarranted objections.

This case does not involve exorbitant environmental liabilities, which apparently drove the failed effort of trustees to secure congressional establishment of a "gross negligence" standard of care for personal liability.

This case does not involve trustee action. It involves inaction—a failure to "collect and protect" estate assets.

While trustees may have some authority to act or not act without Court oversight, the **Bankruptcy Code contradicts any suggestion bankruptcy trustees may abandon property without court approval**. The Court should eschew Goldman's continuing efforts here, as in her motion to dismiss, to argue about facts by asserting inaction was the product of reasonable and purposeful decision-making. Were that the case, Goldman would have responded to correspondence explaining so much.

There is no dispute Congress has authorized bankruptcy trustees to be held personally liable for breach of fiduciary duty under *some* standard of conduct. That being the case, the suggestion that courts can nevertheless confer upon them QJI (a federal common law concept) for doing trustee things of any variety is misguided. Congress intended trustees to be liable for violation of fiduciary duties as a means of assuring proper administration. Suits by beneficiaries for breach of fiduciary duty by trustees are "first party" actions. Congress could never have envisioned bankruptcy trustees as enjoying quasi-judicial immunity against a claim for breach of fiduciary duties. **QJI does not extend to breach of fiduciary duty claims against a trustee by beneficiaries of the estate.** In re McKenzie, 716 F.3d 404, 413 (6th Cir. 2013). That is why a trustee asserting immunity **must** secure

7

immunity through a different route.  See In re Yellowstone Mountain Club, LLC, 841 F.3d 1090, 1097 (9th Cir. 2016); Matter of Harris, 590 F.3d 730, 730, 742 (9th Cir. 2009); March et al., Cal. Practice Guide, Bankruptcy ¶ 10:180-181 (Rutter Group 2023); In re Continental Coin Corp, 380 B.R. 1, 15 (Bankr. C.D. Cal. 2007) (comfort order "absolute requirement").

Goldman asserts "a trustee's decision to abandon assets of the estate" constitutes a "discretionary judgment."  GB at 10 citing In re Cont'l Coin Corp., 2009 U.S. Dist. LEXIS 74392 at 12-13 (Zamora v. Virtue).  Not so.  Th**e Bankruptcy Code does not permit trustees to make independent decisions regarding abandonment**.  Abandonment under Section 554 always requires court action.  In re Reed, 940 F.2d 1317, 1321 (9th Cir. 1991) ("three ways in which a trustee can abandon property, all of which require court action…").  If trustees were free to abandon estate assets unilaterally, they could violate their fiduciary duties with impunity.  This would be inconsistent with the longstanding scheme of Congress to promote good administration of bankruptcy estates by imposing fiduciary duties on administrators.  The doctrines of judicial immunity and quasi-judicial immunity stem from federal common law.  They were not designed to apply to persons owed fiduciary duties.  "The trustee who does not act prudently to maintain and preserve the value of the property of the estate will be subject to surcharge by the bankruptcy court."  See Maschmeyer, P. & Marinas, F., Collier's

8

Handbook for Trustees and Debtors in Possession ¶ 10.03[5] at 10-29 to 10-30 (LexisNexis 2020).

### III. CONCLUSION

Creditors believe that the failure to secure a court order rendered the trustee's immunity defense untenable. As explained in McKenzie, that rule applies in first party cases.

DATE:   October 4, 2025

>BY: /s/ Charles Q. Jakob
>CHARLES Q. JAKOB
>Attorney for Appellants

9

## Certificate of Compliance

**9th Cir. Case Number <u>24-2249</u>**

  I am the attorney for the Appellants. The brief's type size and typeface comply with FRAP 32(a)(5) and (6). This brief contains **2009** words (less than 4200) including the items exempted by FRAP 32(f),

 I certify that this brief *(select only one)*:

 [ x ] complies with the word limit of Cir. R. 32-1.

 [ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** <u>/s/ Charles Q. Jakob</u>      **Date:**     <u>October 4, 2025</u>